UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action, File Number 24 CV 113



Kent J. Ashton

Plaintiff

v.         COMPLAINT

Administrator,
Federal Aviation Administration

Defendant

## NATURE OF THE ACTION

Plaintiff seeks a writ of mandamus holding unlawful and setting aside a policy of the Federal Aviation Administration which deprives the Plaintiff and other aeronautical airport users of their right under U.S. Constitution, Amend. I to petition the government for a redress of grievances.

## COMPLAINT

Plaintiff Kent J. Ashton alleges and says as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over the U.S. Constitution, amend. I question pursuant to 28 U.S.C. §§ 1331 [Constitutional question].

2. The Court has personal jurisdiction over the parties.

3. Venue is proper in this District pursuant to 28 U.S.C § 1391(e)(1).

## PARTIES

4. Plaintiff Kent J. Ashton ("Ashton") is a resident of Cabarrus County, N.C. He is a retired United States Air Force officer with a Command Pilot rating and was honorably discharge with the rank of Major. Along with his wife, he owns a small aircraft.

-1-

5. Defendant Administrator is the Administrator of the U.S. Federal Aviation Administration ("Administrator" and "FAA").

## SUPPORTING FACTS

6. The Administrator and FAA, through administrative rule-making under 14 C.F.R § 16 "Rules of Practice for Federally Assisted Airport Proceedings" (hereinafter "Part 16") promulgated a policy that sponsors[1] of federally-assisted airports may justly discriminate against aeronautical users who exercise their right to petition the government for a redress of grievances (hereinafter "policy on litigation").

7. The FAA's policy on litigation denies the Plaintiff, as well as other airport users, the protections against grants of exclusive rights and unjust discrimination embodied in U.S. airport law, i.e., Federal Aviation Act of 1958, as amended, 49 U.S.C. §40103(e) (prohibition on exclusive rights), Airport and Airway Improvement Act of 1982, as amended, 49 U.S.C. §§ 47107(a)(1) (unjust discrimination provision) and id. (a)(4) (exclusive rights provision).

8. The FAA's policy on litigation permits airport sponsors to unlawfully deny federal airport benefits to the Plaintiff and other aeronautical users who exercise Petition rights without jeopardizing such sponsors' federal airport grants.

## THE FAA'S POLICY ON LITIGATION SPRINGS FROM THE ASHTON CASE

9. The FAA initially developed its policy on litigation in the case of Ashton v. City of Concord, FAA Part 16 docket No. 16-02-01, Director's Determination, August 22, 2003; 2003 WL 22257715 (F.A.A.); https://part16.airports.faa.gov/pdf/16-02-01-ashton-v-concord-nc-dd.pdf (hereinafter "16-02-01 Director's Determination").

10. The FAA affirmed the above Determination in Ashton v. City of Concord, FAA Part 16 docket No. 16-02-01, Final Decision and Order, December 27, 2004; 2004 WL 7325969 (F.A.A); https://part16.airports.faa.gov/pdf/16-02-01-ashton-v-concord-fad.pdf (hereinafter "16-02-01 Final Order").

11. In the above decisions, the City of Concord, NC ("City") was and is the sponsor of the Concord Regional Airport[2]. 16-02-01 Final Order at 5; 2003 WL 7325969, at *4.

12. In 1996, Ashton commenced a civil action against the City to obtain a list of airport tenants. Ashton v. Crosby, 96-CVD-0001910, Dist. Ct., Cabarrus Co., NC, Oct. 23, 1996). After a lengthy litigation, the City produced the requested records. Settlement Agreement, June 5, 1997.

---

1     "Sponsor means: (1) Any public agency which . . . has received Federal financial assistance for airport development or planning under the Federal Airport Act, Airport and Airway Development Act or Airport and Airway Improvement Act;" 14 CFR §16.3

2     This airport has since be retitled "The Concord-Padgett Regional Airport"

13. On July 12, 1999, Ashton filed a complaint against the City/sponsor with the FAA under 14 C.F.R. § 16. <u>Ashton v. Concord</u>, FAA Part 16 Docket, No. 16-99-09, July 12, 1999 [filed].

14. Following the July 1999 Part 16 complaint (<u>id.</u>) the City evicted the Ashtons and their aircraft from its airport on or about December 21, 1999. <u>See</u> "*Denial of Aircraft Storage*". <u>16-02-01 Final Order</u> at 8; <u>WL 7325969</u> at *7.

15. Some 19 months later in the Fall of 2001 Ashton and his wife reapplied for a storage permit at the Sponsor's airport, citing their successful tenure at the federally-assisted Rowan County Airport[3] in Salisbury, NC. Their application at Concord was denied. <u>See</u> "*Application for renewed tenancy*". <u>id.</u>, at 11-12; <u>WL</u> at *10.

16. In the <u>16-02-01</u> case, the Respondent Concord sponsor asserted that it denied Ashton and his wife any storage lease because " 'given the prior litigation between Concord and Mr. Ashton, Concord does not believe that it would be prudent or in the best interests of the Airport to enter into a new lease with Mr. Ashton.' " <u>See</u> "*Complainants Ongoing litigation and litigiousness*". <u>16-02-01 Director's Determination</u>, at 21; <u>WL 22257715</u>, *18-19. [exhibit citation omitted]. <u>See also</u> "*Continuing Litigation and Financial Burden*" <u>16-02-01 Final Order</u> at 26-27; <u>WL 7325959</u> at *23-24.

17. The FAA accepted the Concord sponsor's rationale, finding that the Ashtons' litigation was proper grounds for denying them a lease at the airport, saying:

> Another of the Respondent's [airport Sponsor's] principal arguments suggests that the City is not obligated to expose itself to future lawsuits by entering into a business agreement with the Ashtons. Given the Ashton's prior history of lawsuits and FAA complaints, plus a threat of future litigation, the Respondent states, "The decision by the City to not lease storage space at the Airport to Mr. Ashton or anyone associated with Mr. Ashton in the ownership of an aircraft is simply a very prudent business decision given the undisputed fact that Ashton intends to continue filing baseless complaints against the City." [exhibit citation omitted]

<u>16-02-01 Director's Determination</u> at 27; <u>WL 22257715</u> at *22.

> Although it is the Complainants' right to pursue complaints and lawsuits to protect their interest, it is the Respondent's right to protect itself from the possibility of future costly and frivolous litigation. In this case, Respondent's rationale appears to be that less contact with the Complainants should result in less litigation. Here, the Respondent's position is not unreasonable [footnote omitted].

> Moreover, the Respondent's Federal obligations limit the City's proprietary rights, but do not eliminate them. In this specific case, considering the Complainants'

---
3  The Rowan County Airport has since been renamed the "Mid-Carolina Regional Airport"

Case 1:24-cv-00113-LCB-JEP   Document 1   Filed 02/14/24   Page 3 of 10

two ongoing legal proceedings (state and Federal), their threat of continued litigation and the subsequent judgment by a state court that the Complainants' action (prior to the filing of this extant complaint), "constitutes a vexatious use of the Courts intended to cause the City to incur unnecessary expenses..." [footnote and exhibit citation omitted], the FAA finds that the Respondent is reasonable in declining to enter into a business agreement with the Complainants for tenancy at the Airport and is consistent with Order 519O.6A §4-15(a).

id., at 27; WL at *23.

18. The FAA's Associate Administrator affirmed the Director's Determination, devoting five pages of his Final Order to the Ashtons' Petition activity (16-02-01 Final Order at 5-7, 9-13, 38-39; 2004 WL 7325969, at *4-6, 8-9, 35-36), and affirming that their Petition activity was reasonable grounds for the sponsor to refuse them space, saying

> The Director noted that Complainants have routinely initiated and threatened litigation against the Respondents. The City has expended considerable resources defending legal actions with the Complainants. The Director stated that dealing with someone who openly admits he will continue suing, even though previous judgments have been made on essentially the same issues, could be a financial drain on both the airport sponsor and airport users. [internal citation omitted]

16-02-01 Final Order at 27; WL 7325969 at *24.

And

> Based on the record, the Associate Administrator is not persuaded the Director erred by considering the number of complaints and legal actions taken by the Complainants. Neither is the Associate Administrator persuaded that the Director gave undue weight to the financial burden those actions may have placed on the Respondent. It is clear in the Determination that these facts were taken in context with the entire complaint and in consideration of the voluminous administrative record in this matter.

id., at 28; WL at *25.

19. Thus the Administrator held that the Ashtons' Petition activity, not just under Part 16 but also in letters to government officials and in other legal venues, was an acceptable reason for the sponsor to deny them storage space on the airport and that such denial did not violate the sponsor's Grant Assurance obligations.

20. The Ashtons petitioned the Court of Appeals for review of the 16-02-01 Final Order pursuant to 14 CFR § 247(a)[4]. Their petition was denied. Ashton v. FAA, D.C. Cir., 04-1124, May 16, 2006 [filed], 2006 U.S. App Lexis 32409, 181 F. App'x 2 (D.C. Cir. 2006) [unpublished], pet. den.; reh'g. en banc den., D.C. Cir., 04-1124, Aug. 17, 2006 [filed], 2006 U.S.App. LEXUS 21372

21. Finally, the Ashtons formally petitioned the FAA in November 2020 to incorporate 1st Amendment protections in Part 16 proceedings. (www.regulations.gov/document/FAA-2020-1142-0001). The FAA denied their petition. Letter from James M. Crotty, Director, Aircraft, Commercial Space and Airport Rules Division, Office of Rulemaking, January 25, 2021.

22. Accordingly, the Ashtons exhausted administrative remedies per 14 CFR §16.247(a) and the FAA's policy on litigation became enshrined in FAA administrative rulemaking. E.g., 14 CFR §16.33(g)[5], (h).

FAA EMPLOYMENT OF THE POLICY ON LITIGATION SINCE THE ASHTON CASE

23. Since the Ashton cases, the FAA employed its policy on litigation against other Part 16 complainants.

24. In Skydive v. City of Monroe, the Skydive complainant litigated issues with airport sponsor City of Monroe in Gwinnett Co. Superior Court as well as under 14 C.F.R. § 16. See generally Skydive Monroe v. City of Monroe, FAA Part 16 Docket No. 16-06-02, Director's Determination March. 30, 2007 at 13 [pages unnumbered]; 2007 FAA Lexis 117 at *31; [no Westlaw citation] https://part16.airports.faa.gov/pdf/16-06-02-skydive-monroe-v-monroe-ga-dd.pdf

25. In Skydive, the FAA found that "While Respondent [City of Monroe] states that it terminated Complainant's tenancy-at-will because it had found a new tenant that would pay a higher lease rate, Respondent's decision also hinged on Complainant's *ownership dispute and pending litigation*". id., at 13 [pages unnumbered]; Lexis at *30] [emphasis added] [footnotes omitted]

26. The FAA dismissed Skydive's Part 16 complaint, in part, because of the Skydive complainant's prior and pending litigation with the City of Monroe, saying:

> [] Respondent [City of Monroe] correctly concludes that an airport sponsor has a right to protect itself from unnecessary litigation or financial burdens that could harm the airport or negatively impact other airport users. Prior Part 16 decisions

---

4  "A person may seek judicial review, in a United States Court of Appeals, of a final decision and order of the Associate Administrator, and of an order of dismissal with prejudice issued by the Director, as provided in 49 USC 46111 or 49 USC 47107(d) and 47111(d)." 14 CFR §247(a)

5  "The Associate Administrator will issue a final decision and order within 60 days after the due date of the reply."

> have established that an airport has the right and responsibility to protect itself
> from future litigation. Moreover, Respondent may factor litigation into its
> decision making process.

id., at 15 [unnumbered]; LEXIS at *34 [citing, *inter alia,* the Ashtons' 16-00-01 decisions]

27. The FAA further employed its policy on litigation in JetAway Aviation v. Montrose County, FAA Part 16 Docket 16-08-01, Director's Determination, July 2, 2009; 2009 WL 2136622 (F.A.A.); https://part16.airports.faa.gov/pdf/16-08-01-jetaway-aviation-v-montrose-county-dd.pdf.

28. The JetAway complainant previously filed a complaint under 14 CFR § 16 and litigated extensively with the Montrose County sponsor in other legal venues. See *"Other Disputes Between the Parties".* id., at 19-20; WL at *17-18.

29. The FAA dismissed the JetAway complainant's claims, holding that "One example of where an airport sponsor may exercise its proprietary rights is to protect itself as a going concern in the face of litigation[10]". id., at 17; WL at *16. [footnote in original, citing Ashtons' 16-02-01 Director's Determination].

30. Thus the FAA dismissed JetAway's Part 16 complaint, in whole or in part, on the JetAway complainant's Petition activity, ignoring JetAway's Amendment I right to petition Montrose County, or the FAA itself, for a redress of grievances.

31. Also in 2009, the FAA applied its policy on litigation against an aeronautical training center, in Goodrich Pilot Training Center, et al v. Village of Endicott, NY, Part 16 docket 16-18-03, Director's Determination, April 3, 2009; 2009 WL 10685254 (F.A.A.); https://part16.airports.faa.gov/pdf/16-08-03-goodrich-v-village-of-endicott-dd.pdf

32. In Goodrich, the FAA determined that a village terminated the complainant's airport lease for alleged audit irregularities, "history of self-dealing" and "Complainants' litigiousness".[6] (id., at 19; WL at *16).

33. The FAA discussed the Goodrich complainant's *"Proactive and Reactive Litigiousness"* [id. at 24-25; WL at *20-21] and once again found that a sponsor terminating a tenant's lease because of the tenant's Petition activity was reasonable, saying "The Director also found an airport sponsor's attempt to limit contact as a way to reduce litigation with the complainant as reasonable." [id., at 25; WL at *22] [citing the Ashton 16-02-01 case] [italics in original]

---

6   Goodrich filed complaints against village under 14 CFR §§ 13 and 16 as well as lawsuits in New York courts.

Case 1:24-cv-00113-LCB-JEP   Document 1   Filed 02/14/24   Page 6 of 10

34. Thus the <u>Ashton</u>, <u>JetAway</u>, <u>Skydive</u> and <u>Goodrich</u> decisions affirmed the FAA's policy on litigation, establishing that an airport sponsor may take adverse action against an aeronautical user who exercises petition rights or who might do so in the future, and that such adverse action by an airport sponsor is consistent with a sponsor's Grant Assurance obligations.

35. Following the pattern first laid down in the <u>Ashton</u> case, the FAA ignored these complainants' Amend. I [U.S. Constitution] Petition rights and, we presume, if challenged, the agency would claim again, as it did in the Ashton case, that the FAA did not have authority to hear Constitutional claims. <u>E.g.</u>, <u>16-02-01 Final Order</u> at 3; <u>2004 WL 7325969</u> at *2.

## AIRPORT SPONSOR RELIANCE ON THE FAA POLICY IS A CONTINUING VIOLATION OF THE PETITION CLAUSE

36. With this background, the FAA's policy on litigation has today found its way into various rules and regulations at federally-assisted airports, creating an ongoing violation of aeronautical users' Petition rights.

37. The Mid-Carolina Regional Airport, Salisbury, NC, ["Mid-Carolina"] is a federally-assisted airport subject to 49 USC §40103 et seq. Ashton is a current aeronautical tenant.

38. In July 2023, as a condition to leasing a hangar at the Mid-Carolina airport, Ashton was compelled to agree to lease terms requiring him to "abide by the Airport Rules and Regulations, Minimum Standards, applicable Federal and State statutes, and regulations of the Federal Aviation Administration ("FAA")" (<u>Annual Hangar Lease,</u> ¶4(B) and p. 6)

39. Mid-Carolina's Airport Rules and Regulations state as "Possible Grounds for Rejecting Application" [i.e., rejecting an application to obtain or renew a lease or engage in other business at its airport]:

> The County may reject any proposal, . . . or application for any one or more of the following reasons (as determined in the sole discretion of the County).
> . . .
> The entity has been party to vexatious or frivolous litigation, including, without limitation, administrative litigation, against the County.

[<u>Mid-Carolina Regional Airport Rules and Regulations</u>, March 6, 2023, Appendix A-23, at p. 38.];
https://rowancountync.gov/DocumentCenter/View/42376/Rules_andRegulations-2023-PDF].

40. Thus Ashton was compelled to agree to the Mid-Carolina rule jeopardizing his Petition right as a condition to renewing his hangar lease. Moreover, if he complains about the airport or its

county owner under Part 16 or in other legal venues, Mid-Carolina authorities may deny him any further lease and be in compliance with the FAA policy on litigation.

41. Moreover, the Mid-Carolina Rule grants the Rowan County airport owner the "sole discretion" (id.) to determine when an aeronautical user's Petition activity is vexatious or frivolous. The Amend. I Petition clause allows the sponsor no such power.

42. The Plaintiff and others reading these FAA Part 16 decisions can rightfully ask themselves if filing a complaint about an airport sponsor under Part 16 or in another legal venue would thereby classify them as a "financial burden" on such sponsor that would justify adverse sponsor action in the eyes of the FAA.

## COUNT I

## DEPRIVATION OF THE RIGHT OF PETITION UNDER U.S. CONSTITUTION, AMEND. I

43. The FAA policy on litigation deprives aeronautical users, including the Plaintiff, of their right under the Petition clause of U.S. Constitution, Amend. I to petition the FAA under 14 CFR §16 or §13.

44. The FAA policy on litigation deprives aeronautical users, including the Plaintiff, of their right to litigate with a federally-assisted airport sponsor in other legal venues because such litigation could be grounds for denial of federal airport benefits.

45. The FAA policy on litigation places an unconstitutional "prior restraint" on the Plaintiff, and on other airport users' right to engage in litigation with an airport sponsor in that such litigation could result in eviction or other adverse sponsor action, in compliance FAA's policy.

46. The Mid-Carolina airport rule, implemented following the FAA's policy on litigation would chill a person of ordinary firmness from exercising Petition rights with the Mid-Carolina sponsor or filing a complaint under Part 16 about this sponsor, on pain of losing federal airport benefits.

47. The FAA policy on litigation is an ongoing violation of the Petition clause.

## COUNT II

## DEPRIVATION OF RIGHTS UNDER FEDERAL AIRPORT ACTS

48. The FAA policy on litigation permits airport sponsors to deny services, deny federal benefits, unjustly discriminate against airport users, and grant exclusive rights to incumbent users, in violation of 49 USC §§ 40103(e), 47107(a)(1) and (a)(4)[7].

---

[7] 49 USC §§ 40193(e) and 47017(a)(1) prohibit unjust discrimination, § 47107(a)(4) prohibits granting exclusive rights

49. The FAA policy on litigation, as applied at Mid-Carolina, places an unconstitutional condition on aeronautical users' access a federally-assisted airport in that tenants must agree to terms and rules jeopardizing their right to litigate with a sponsor or complain about an airport sponsor under 14 C.F.R. §16.

## COUNT III

## VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

50. The FAA's policy on litigation is arbitrary and capricious under the Administrative Procedures Act, 5 U.S.C. § 706(2)(a) (arbitrary and capricious standard), because it absolves the FAA from acknowledging and acting upon unconstitutional actions by an airport sponsor which would otherwise violate the "unjust discrimination" and "exclusive rights" provisions of 49 USC §§ 40103(e), 47107(a)(1) and (a)(4).

51. The FAA's policy on litigation is unconstitutional under 5 U.S.C. § 706(2)(B) (actions contrary to constitutional right) in that although the FAA declared "constitutional claims" and "constitutional questions" to be outside its jurisdiction, the FAA nevertheless determined the Ashton, JetAway, Skydive and Goodrich cases, in part, on the basis of these petitioners' constitutionally protected activity.

52 The FAA abused its discretion, in violation of 5 U.S.C. 706(2)(A) (abuse of discretion standard), by maintaining that constitutional issues raised in the Ashton and subsequent cases were outside the FAA's jurisdiction, yet the agency failed to dismiss claims involving Constitutional questions as required by 14 CFR § 16.25(a)(1)[8], or failed to transfer those claims to the District Court.

## RELIEF SOUGHT

53. Plaintiff seeks a judgement pursuant to 5 U.S.C. § 706(2), holding unlawful the FAA's policy on litigation and setting aside the four FAA decisions that promulgate the policy, i.e., Ashton 16-02-01 Final Order, JetAway 16-08-01 Director's Determination, Skydive, 16-06-02 Director's Determination and Goodrich 16-08-03 Director's Determination.

54. Plaintiff seeks an order directing the FAA not to rely on any person's Petition activity as reasonable grounds for an adverse Sponsor action in a 14 C.F.R. § 16 action.

55. Plaintiff seeks an order declaring that for all national federally-assisted airports subject to Airport Improvement Program (AIP) Grant Assurances, i.e., 49 Fed. Reg. 174, 35282-35291, Sept. 6, 1984 (as amended), codified at 49 U.S.C. § 47107, an airport sponsor rule that jeopardizes airport benefits for persons exercising Petition rights, is unconstitutional

---

8   "Within 20 days after the receipt of the complaint, unless a motion has been filed under § 16.26, the Director will dismiss a complaint, or any claim made in a complaint, with prejudice if: (1) It appears on its face to be outside the jurisdiction of the Administrator under the Acts listed in § 16.1;" 14 CFR § 25(a)(1)

-9-

56. Plaintiff seeks an order requiring training for employees of the FAA's Office of the Associate Administrator for Airports on the Constitutional rights of parties making complaints under 14 CFR § 16, such training to be conducted by a reputable authority on Constitutional law.

57. Plaintiff seeks other such relief to which the Plaintiff may be entitled.

*Kent J. Ashton*   FEB 14, 2024

Kent J. Ashton
6270 Lynwood Dr. NW
Concord, NC 28027-2912
(704) 784-1874 (home)
(704) 796-0919 (cell)
kjashton@vnet.net

Pro se

Case 1:24-cv-00113-LCB-JEP   Document 1   Filed 02/14/24   Page 10 of 10