```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

KENT J. ASHTON,                )
                               )
         Plaintiff,            )
                               )
     v.                        )      1:24CV113
                               )
ADMINISTRATOR, FEDERAL         )
AVIATION ADMINISTRATION,       )
                               )
         Defendant.            )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

In this action, Plaintiff Kent J. Ashton seeks relief from Defendant Bryan Bedford, Administrator of the Federal Aviation Administration ("FAA"), for alleged violations of the Federal Aviation Act of 1958, as amended, 49 U.S.C. § 40101 et seq., the Airport and Airway Improvement Act ("AAIA"), as amended, 49 U.S.C. § 47101 et seq., and the Administrative Procedure Act ("APA"), as well as the deprivation of his right to petition under the First Amendment to the United States Constitution.[1] The Administrator now seeks to dismiss Ashton's claims on a variety of grounds, including on the ground that Ashton lacks standing under Article III. (Doc. 21.) Ashton has filed a response in opposition (Docs. 23; 24), and the Administrator has filed a reply (Doc. 26). For

---

[1] Bryan Bedford was sworn in as Administrator of the FAA in July 2025. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted for Michael Whitaker as Defendant in this action.

the reasons that follow, the motion will be granted and Ashton's claims will be dismissed.

I.  BACKGROUND

   A.  Statutory Scheme

The Airport Improvement Program ("AIP") permits cities, counties, or private owners of public-use airports ("Sponsors") to submit applications for federal funding of airport development projects.  See 49 U.S.C. §§ 47102(26), 47105(a).  A Sponsor's application may only be approved if the Sponsor provides written assurance that the "airport will be available for public use on reasonable conditions and without unjust discrimination."  Id. § 47107(a)(1).

The FAA has promulgated regulations, entitled "Rules of Practice for Federally-Assisted Airport Enforcement Proceedings ("Part 16 Proceedings"), that apply to all FAA "proceedings involving Federally-assisted airports."  See 14 C.F.R. § 16.1(a). The Part 16 Proceedings provide for FAA review and administrative appeal of any airport's alleged non-compliance with the AIP.  Id. §§ 16.23(a), 16.31(c).  After administrative appeal, "the party may then seek judicial review with a federal court of appeals." Mid-Atl. Soaring Ass'n, Inc. v. FAA, No. RDB 05-2110, 2006 WL 1892412, at *2 (D. Md. June 29, 2006) (citing 49 U.S.C. § 46110).

   B.  Factual History

The allegations of Ashton's first amended complaint (Doc.

2

10), which incorporates by reference certain allegations of his initial complaint (Doc. 1) (collectively, the "complaint"), viewed in the light most favorable to Ashton, show the following.

Ashton owns a small aircraft, and he previously leased hangar space from Concord Regional Airport – a federally-assisted airport owned by the city of Concord, North Carolina – until he was evicted in 1999. (Doc. 1 ¶¶ 4, 11-14.) He later reapplied for tenancy, but Concord denied his application. (Id. ¶ 15.) Ashton challenged his eviction and denial in a Part 16 Proceeding and through an array of actions in state and federal court. See, e.g., Ashton v. FAA, 181 F. App'x 2 (D.C. Cir. 2006); Ashton v. City of Concord, 337 F. Supp. 2d 735 (M.D.N.C. 2004); Ashton v. City of Concord, 160 N.C. App. 250 (affirming the trial court's order for Ashton "to pay attorney's fees for his vexatious conduct and abuse of the judicial system"), appeal dismissed, 357 N.C. 577 (2003). However, his challenge proved unsuccessful.

After his eviction from Concord Regional Airport, Ashton rented hangar space from Mid-Carolina Regional Airport ("Airport"), which is owned, operated, and sponsored by Rowan County, North Carolina under the AIP. (Docs. 1 ¶ 15; 10 ¶ 2; 24 at 9.) Ashton remains a "current aeronautical tenant" at the Airport. (Doc. 1 ¶ 37.) He renewed his lease at the Airport in July 2023, and the lease included a provision requiring that Ashton "abide by the Airport Rules and Regulations." (Docs. 1 ¶ 38; 10-

3

3 at 6.)  At the time of his lease renewal, the Airport's Rules and Regulations permitted Rowan County to reject any proposal or application from an entity if "[t]he entity has been a party to vexatious or frivolous litigation, including, without limitation, administrative litigation, against [Rowan] County."  (Docs. 1 ¶ 39; 10-4 at 8.)

Notably, Ashton does not allege that Rowan County denied his application for lease renewal.  Additionally, after 2023, Rowan County amended the Airport's Rules and Regulations to remove the above provision.  (Doc. 14 ¶ 4.)  As a result, Ashton moved to dismiss his claims against Rowan County in this action.  (See id.)  The court granted the motion, leaving only his claims against the FAA.  (See Doc. 16.)

Ashton's claims against the FAA stem from an alleged FAA policy, which he calls the "policy on litigation."  (Doc. 1 ¶ 6.)  According to Ashton, the policy is not formal or otherwise written down.  Rather, Ashton points to a series of acts and decisions reflecting a policy that allows "[S]ponsors of federally-assisted airports [to] justly discriminate against aeronautical users who exercise their right to petition the government for a redress of grievances."  (Id. ¶ 6.)  The alleged policy thereby "permits airport sponsors to unlawfully deny federal airport benefits to [Ashton] and other aeronautical users who exercise" their First

4

Amendment rights "without jeopardizing such [S]ponsors' federal airport grants." (Id. ¶ 8.)

According to Ashton, the FAA initially developed the policy on litigation during Ashton's own Part 16 Proceeding involving Concord Regional Airport in the early 2000s. (Id. ¶¶ 9-10.) In that proceeding, the city of Concord denied his lease renewal application because – "given the prior litigation between Concord and Mr. Ashton" – Concord did "not believe that it would be prudent or in the best interests of the [Concord Regional Airport] to enter into a new lease with Mr. Ashton." (Id. ¶ 16.) Ashton contends that the FAA then "accepted" Concord's rationale and concluded that Ashton's "Petition activity . . . was an acceptable reason for the [airport] sponsor to deny [Ashton and his wife] storage space on the airport." (Id. ¶¶ 17-19.)

According to Ashton, the FAA's policy on litigation has now become "enshrined in FAA administrative rulemaking."[2] (Id. ¶ 22.) Ashton contends that four subsequent FAA decisions employed the alleged policy on litigation against other complainants.[3] Thus,

---

[2] Ashton alleges that this policy was created "through administrative rule-making under 14 C.F.R. § 16." (Doc. 1 ¶ 6.) However, based on a review of the allegations in the complaint, its attachments, and Ashton's claims, it seems that he alleges the existence of a policy instituted through a series of individual Part 16 Proceedings rather than any formal rulemaking process.

[3] See Skydive Monroe, Inc. v. City of Monroe, 16-06-02, 2007 WL 1058450, at *12-13 (F.A.A. Mar. 30, 2007); JetAway Aviation, Inc. v. Montrose County, No. 16-08-01, 2009 WL 2136622, at *16 (F.A.A. July 2, 2009); Goodrich Pilot Training Ctr. v. Village of Endicott, No. 16-18-03, 2009

5

according to Ashton, the FAA's conduct has "affirmed the FAA's policy on litigation, establishing that an airport sponsor may take adverse action against an aeronautical user who exercises petition rights or who might do so in the future." (Id. ¶ 34.) Moreover, Ashton has identified nine federally-assisted airports that have adopted provisions mirroring the previously quoted language in the Airport's 2023 rules and regulations, resulting in an "ongoing violation of aeronautical users' Petition rights." (See Docs. 1 ¶ 36; 17; 27.)

Ashton contends that he was "compelled" to agree to the Airport's rule as a condition of renewing his hangar lease in 2023, thereby "jeopardizing" his right to petition under the First Amendment. (Doc. 1 ¶ 40.) According to Ashton, "if he complains about the airport or its county owner" through a Part 16 Proceeding or any other legal avenue, the Airport "may deny him any further lease and be in compliance with the FAA policy on litigation." (Id.)

Ashton now brings three claims against the FAA, alleging that the FAA's policy on litigation violates: (1) the First Amendment's petition clause; (2) the Federal Aviation Act and the AAIA; and

---

WL 10685254, at *16, 20-21 (F.A.A. Apr. 3, 2009); HTX Helicopters, LLC v. R.I. Airport Corp., No. 16-21-10, 2022 WL 1719208, at *14-15 (F.A.A. May 19, 2022). (Docs. 1 ¶¶ 24-33; 10 ¶ 2.)

6

Case 1:24-cv-00113-TDS-JEP   Document 28   Filed 09/25/25   Page 6 of 18

(3) the APA. (Id. ¶¶ 43-52.) He seeks various forms of declaratory and injunctive relief. (Id. ¶¶ 53-55.)

**C. Procedural History**

Ashton commenced this lawsuit in February 2024. The clerk's office accepted Ashton's filing and filing fee, and the matter was assigned a civil case number. However, the review of his complaint was placed on hold due to the pre-filing injunction issued in one of Ashton's previous cases. He then filed several motions for leave to proceed (Docs. 4; 5; 6), which the court ultimately granted because of the case's procedural posture and Ashton's contention that this matter differed from previous matters involving Concord (see Doc. 7). The court noted that "any determination regarding the substance of the claims [could] be addressed or resolved on a motion to dismiss or other dispositive motion later in the proceedings." (Id. at 2.)

Following the court's order, Ashton filed an amended complaint and named Rowan County as an additional defendant. (Doc. 10.) However, he filed a "motion to dismiss" shortly thereafter, seeking to dismiss Rowan County because the "offending" language in the Airport's rules had been removed. (Doc. 14.) The court granted Ashton's motion, and Rowan County was dismissed. (See Doc. 16.)

In November 2024, Defendant moved to dismiss Ashton's claims for pursuant to Federal Rules of Civil Procedure 12(b)(1) and

7

12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. (Doc. 21.) The matter is now fully briefed and ripe for the court's consideration.

**II. ANALYSIS**

   **A. Standard of Review**

Ashton appears pro se. Thus, his complaint is "not . . . scrutinized with such technical nicety that a meritorious claim should be defeated." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). But the liberal construction of a pro se litigant's filing does not require the court to ignore clear defects in it, Bustos v. Chamberlain, No. 09-1760, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), or to become an advocate for the pro se party, Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that "[d]istrict judges are not mind readers"). Moreover, pro se parties are expected to comply with applicable procedural rules. See Chrisp v. Univ. of N.C.-Chapel Hill, 471 F. Supp. 3d 713, 715-16 (M.D.N.C. 2020) (requiring pro se plaintiff to comply with the Federal Rules of Civil Procedure).

      **1. Rule 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal based on the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Here, the Administrator contends that the court lacks subject matter jurisdiction because

8

Ashton does not have standing to sue. Specifically, the Administrator brings a facial challenge under Rule 12(b)(1), asserting that the complaint alleges facts that, even if taken as true, do not establish subject matter jurisdiction. See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009); Doe v. United States, 381 F. Supp. 3d 573, 590 (M.D.N.C. 2019). In reviewing a facial challenge under Rule 12(b)(1), a court should afford plaintiffs the same procedural protection as they would receive under Rule 12(b)(6) consideration. Kerns, 585 F.3d at 192; see also Willner v. Dimon, 849 F.3d 93, 99 (4th Cir. 2017). Accordingly, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns, 585 F.3d at 192.

### 2. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

9

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

**B. Whether Ashton Has Article III Standing**

Ashton's response brief fails to address several of the Administrator's grounds for dismissal. (See Doc. 24.) Nevertheless, the court "has an obligation to review the motion[] to ensure that dismissal is proper." Stevenson v. City of Seat

10

Case 1:24-cv-00113-TDS-JEP    Document 28    Filed 09/25/25    Page 10 of 18

Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014). Because "[s]tanding 'is a threshold jurisdictional question,'" the court considers it first. See Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 343 (4th Cir. 2017) (quoting Pye v. United States, 269 F.3d 459, 466 (4th Cir. 2001)); see also Benham v. City of Charlotte, 635 F.3d 129, 134 (4th Cir. 2011) ("We begin – and end – our inquiry with the question of whether the Plaintiffs possess standing to pursue this action." (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998))).

Ashton objects to the FAA's alleged policy on litigation, which would allow airports to reject any proposal or application from an entity if the "entity has been party to vexatious or frivolous litigation" against their Sponsors under the AIP. (Docs. 1 ¶ 39; 10-4 at 7-8.) Defendant counters that any alleged harm caused by this policy is too speculative and hypothetical to constitute an injury in fact. (Doc. 22 at 7-9.)

Article III of the United States Constitution empowers federal courts to decide "Cases" and "Controversies." U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case — in other words, standing." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (quoting Raines v. Byrd, 521 U.S. 811, 819 (1997)). To satisfy the "irreducible constitutional minimum of standing," a plaintiff must "show (1) that he suffered an injury

11

in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury would likely be redressed by judicial relief." Fernandez v. RentGrow, Inc., 116 F.4th 288, 294 (4th Cir. 2024) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). "The party invoking federal jurisdiction bears the burden of establishing the[] elements" of standing. Lujan, 504 U.S. at 561.

The injury in fact requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). To establish injury in fact, the plaintiff must show that the injury is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560-61 (citation modified). To be concrete and particularized, "the alleged injury 'must affect the plaintiff in a personal and individual way'" and cannot simply constitute a "generalized grievance" for which the plaintiff seeks "to vindicate an interest common to the entire public." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 156 (4th Cir. 2000) (en banc) (quoting Lujan, 504 U.S. at 560 n.1). In considering whether an injury is actual or imminent, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending' or

12

there is a 'substantial risk that the harm will occur.'" Susan B. Anthony List, 573 U.S. at 158 (quoting Clapper v. Amnesty Int'l, USA, 568 U.S. 398, 410, 414 n.5 (2013)); Friends of the Earth, 204 F.3d at 160 (explaining that a "threatened" injury constitutes an injury in fact only where it is "certainly impending"). "'Allegations of possible future injury' are not sufficient." Clapper, 568 U.S. at 409 (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)).

Here, Ashton is a "current aeronautical tenant" at the Airport. (Doc. 1 ¶ 37.) He voluntarily renewed his lease with the Airport in 2023, and the Airport accepted his lease renewal application. (Id. ¶ 38.) Moreover, the Airport has since removed the provision from its Rules and Regulations that allowed it to reject proposals from entities who have "been party to vexatious or frivolous litigation" against Rowan County. (Docs. 14 ¶ 4; 10-4 at 7-8.)

As the Administrator correctly explains (Doc. 22 at 8), for Ashton to suffer an injury in fact at the Airport because of the FAA's alleged policy on litigation, the Airport would first have to reject Ashton's hypothetical future lease renewal application because of his vexatious or frivolous litigation. Ashton then would have to challenge the rejection before the FAA. Finally, the FAA would have to uphold the rejection while citing a general FAA policy allowing airports to reject lease applications based on

13

applicants' First Amendment-protected activity. Ashton has not alleged that any of these events has occurred, and the fact that the Airport removed the "offending" provision from its Rules and Regulations renders this sequence of events even more remote. Accordingly, any hypothetical harm to Ashton caused by the FAA's alleged policy on litigation "relies on a highly attenuated chain of possibilities" and cannot "satisfy the requirement that threatened injury must be certainly impending." See Clapper, 568 U.S. at 410.

Despite Ashton's contentions, neither the termination of Ashton's lease at Concord Regional Airport nor the FAA's alleged implementation of the policy on litigation against other complainants at other airports demonstrates an injury in fact via threatened enforcement of the policy against Ashton. (See Doc. 24 at 6.) First, Ashton's claims here do not stem from the termination of his earlier lease, which was fully litigated more than twenty years ago. Second, Ashton does not allege any personal involvement in the Part 16 Proceedings brought by other complainants at other airports. Absent personal involvement, any alleged implementation of the FAA's policy on litigation certainly has not affected Ashton in a "personal and individual way." See Friends of the Earth, 204 F.3d at 156 (quoting Lujan, 504 U.S. at 560 n.1).

14

Ashton correctly argues that a current "chilling effect on his right of Petition" may constitute a concrete harm. (Doc. 24 at 6.) "[T]o demonstrate injury in fact, it is sufficient to show that one's First Amendment activities have been chilled." Smith v. Frye, 488 F.3d 363, 272 (4th Cir. 2007) (citation modified). But the "chilling effect . . . must be objectively reasonable," Benham, 635 F.3d at 135 (alteration in original) (quoting Zanders v. Swanson, 573 F.3d 591, 593-94 (8th Cir. 2009)), and the challenged government action must be "likely [to] deter a person of ordinary firmness from the exercise of First Amendment rights," id. (alteration in original) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005)). Notably, "sham" and "baseless litigation [are] not immunized by the First Amendment right to petition" and are "not within the scope of First Amendment protection." Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 743 (1983).

Ashton has no First Amendment right to engage in vexatious or frivolous litigation.[4] On its face, the FAA's alleged policy on

---

[4] Ashton argues that no court has found his challenges frivolous or otherwise characterized them as sham litigation. (Doc. 24 at 8.) However, the North Carolina Court of Appeals did affirm the trial court's order that Ashton pay the opposing side's attorney's fees "for his vexatious conduct and abuse of the judicial system." Ashton v. City of Concord, 160 N.C. App. 250, appeal dismissed, 357 N.C. 577 (2003). Regardless, the court need not determine whether Ashton engaged in past vexatious or frivolous litigation to determine whether Ashton has sufficiently alleged that his protected First Amendment activities have been chilled.

15

litigation therefore cannot have any direct, adverse effect on Ashton's right to petition under the First Amendment. Moreover, it is unclear how the FAA's alleged policy on litigation would be applied to Ashton after the removal of the "offending" provision from the Airport's Rules and Regulations. Finally, Ashton has alleged no occasion on which he intended to exercise his First Amendment right to petition but was chilled from doing so because of the FAA's policy. Cf. Cooksey v. Futrell, 721 F.3d 226, 236 (4th Cir. 2013) (holding that the plaintiff "experienced a non-speculative and objectively reasonable chilling effect" when he alleged specific conduct he would have undertaken absent the defendant's actions). Thus, any chilling effect on Ashton's protected First Amendment activities would be both objectively unreasonable and entirely speculative.

Ashton also contends that he has standing under the continuing violation doctrine because of "Rowan County's 2023 implementation of the FAA policy and the policy's employment by other federally-assisted airport[s]." (See Doc. 24 at 7.) The continuing violation doctrine tolls the statute of limitations "when a harm has occurred more than once in a continuing series of acts or omissions." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). But, as the Administrator correctly argues, Ashton does not contend that an airport refused to lease him space because he engaged in protected First Amendment activity – let alone that the FAA issued

16

an order upholding such a refusal. (Doc. 22 at 9.) Moreover, as already noted, Ashton cannot rely on the FAA's alleged implementation of the policy against other complainants to establish a personal and individual injury in fact. Thus, the continuing violation doctrine fails to alter the court's determination that Ashton lacks Article III standing.

Finally, Ashton alleges that the FAA's policy on litigation violates the APA because the policy is arbitrary, capricious, an abuse of discretion, and unconstitutional. (Doc. 1 ¶¶ 50-52.) Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, to receive judicial review, a litigant must "'show, at the outset of the case, that he is injured in fact by agency action.' Thus, a litigant cannot bring an APA claim unless and until she suffers an injury in fact by agency action." Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys., 603 U.S. 799, 807 (2024) (citation omitted) (quoting Dir., Off. of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co., 514 U.S. 122, 127 (1995)). Accordingly, Ashton's claims again fail due to the lack of an alleged injury in fact.

In sum, Aston's failure to allege an injury in fact sufficient under Article III renders the court without subject matter

jurisdiction over his claims. The Administrator's motion to dismiss will be granted, and Ashton's claims will be dismissed.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that the Administrator's motion to dismiss (Doc. 21) is GRANTED, and that Plaintiff Ashton's complaint (Doc. 1) and first amended complaint (Doc. 10) are DISMISSED WITHOUT PREJUDICE.

<pre>
                                          /s/   Thomas D. Schroeder
                                         United States District Judge
September 25, 2025
</pre>